UNITED STATES of America ex rel.
Steven GRUNDSET,
Petitioner-Appellee,

v.

Gayle FRANZEN, Director, Department
of Corrections, State of Illinois,
Respondent-Appellant.

No. 80–2689.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1981.

Decided April 13, 1982.

Rehearing and Rehearing En Banc
Denied July 1, 1982.

Melbourne A. Noel, Jr., Chicago, Ill., for petitioner-appellee.

Michael Mulder, Chicago, Ill., for respondent-appellant.

Before PELL, and CUDAHY, Circuit Judges, and CAMPBELL,* Senior District Judge.

PELL, Circuit Judge.

Respondent Gayle Franzen appeals a district court order granting, on summary judgment, petitioner Steven Grundset's application for a writ of habeas corpus. At issue on appeal is whether there exists no question of material fact that Grundset's constitutional rights were violated by the State's failure to provide a verbatim transcript of his misdemeanor guilty plea.

## I. FACTS

The facts are undisputed. On August 6, 1975, Grundset went to the home of his stepfather. An argument ensued concerning alimony and child support payments due the petitioner's mother. Grundset pulled a gun from his pocket and fired it twice at his stepfather's chest. The gun misfired, apparently because of the age of the gun powder. One bullet protruded from the mouth of the gun; the other bullet remained inside the barrel. The petitioner claims he was intoxicated and remembered little until the next morning. He then phoned the police and inquired whether

there was a warrant for his arrest. At the request of the police, he went to the station where he was arrested.

Grundset subsequently pleaded guilty to aggravated assault, a misdemeanor. He could have been charged with attempted murder. Grundset was represented by an Assistant Public Defender. No transcript was made of the proceedings and apparently no court reporter was present. The docket entry for the date did not indicate whether the defendant was told that his plea constituted a waiver of constitutional rights. The defendant's signature appears, however, at the bottom of the complaint, following an express waiver of the right to trial by jury. Judge Nielson, who had accepted the plea, later sentenced Grundset to one year at the minimum security center in Vandalia.

Represented by new counsel, Grundset filed motions to withdraw his guilty plea and to vacate his conviction and for release on probation. After denial of the motion for probation, a hearing was held on the motion to withdraw the plea. Grundset alleged unawareness that he might have pleaded insanity, that he was inadequately represented by counsel, that the trial court had failed properly to admonish him at the time he pleaded, and that his plea was coerced by threat of a stiffer sentence if he were charged with attempted murder. At the hearing on his motion to withdraw the plea, Grundset testified that to his knowledge the judge had not discussed the consequences of the guilty plea with him. He admitted, however, that he could not recall exactly what had transpired at the plea proceeding which had been held almost a year earlier. The prosecutor called no witnesses nor offered any argument. He did, however, cross-examine Grundset. Judge Nielson stated that it was his habit to inform defendants of their rights before accepting a plea of guilty and that he was sure "in [his] own mind" that he so informed Grundset. The judge denied the

designation.

motion to vacate the plea, summarizing the case as one in which Grundset was necessarily anxious to plead guilty to aggravated assault rather than to face a charge of attempted murder.

The Illinois Appellate Court affirmed the conviction but reduced Grundset's sentence to 364 days, the maximum allowed under Illinois law for a Class A misdemeanor. Grundset had argued on appeal that his constitutional rights were violated by denial of a verbatim transcript. He also claimed that his plea was involuntary because the police threatened to charge him with attempted murder if he again went near his victim. The appellate court found neither a constitutional nor a statutory right [1] to a transcript of the guilty plea proceeding. The court also noted that Grundset had not taken advantage of Illinois Supreme Court Rule 323(c), Ill.Rev.Stat. ch. 110A, § 323(c) (1977), whereby he might have prepared a bystander's report as a substitute for a transcript. The court found that the guilty plea was not coerced and that, because Grundset failed to raise any substantial issue which would have been preserved by a transcript, his objection failed to raise any serious issue of due process.

Grundset then filed a petition for a writ of habeas corpus in the federal district court, alleging that lack of a verbatim transcript gave rise to various constitutional violations. Judge Roszkowski granted Grundset's motion for summary judgment. He relied on *Mayer v. City of Chicago*, 404 U.S. 189, 194, 92 S.Ct. 410, 414, 30 L.Ed.2d 372 (1971), which held that the State must provide an indigent a " 'record of sufficient completeness' " to " 'place before the appellate court an equivalent record of the events at trial from which the appellant's

contentions arise' " and several Illinois cases which had held that the record must affirmatively show the trial judge's compliance with Illinois Supreme Court Rule 402(a). Applying these standards to Grundset's case, the district judge held that no proper record establishing substantial compliance with Illinois Supreme Court Rule 402 and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), was present.[2]

## II. JURISDICTION AND MOOTNESS

■ A preliminary question is whether this dispute is moot. The analysis is a two-part one, requiring an examination whether the district court had jurisdiction at the time Grundset filed his petition and, if so, whether there remains any relief that this court can grant. *Harrison v. Indiana*, 597 F.2d 115, 118 (7th Cir. 1979).

Grundset was released on bail shortly after his arraignment and remained free on bail until December 24, 1979. On that date the Governor of Illinois commuted his sentence from 364 days to time served. Grundset filed his petition for a writ of habeas corpus on May 2, 1979.

■ For jurisdiction to exist in the district court, a petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241 (1976). In *Hensley v. Municipal Court*, 411 U.S. 345, 351, 93 S.Ct. 1571, 1575, 36 L.Ed.2d 294 (1973), the Supreme Court held that a prisoner free on bail pending final disposition of his case satisfied the "in custody" requirement. Because Grundset was similarly free on bail on May 2, 1979, the district court acquired jurisdiction to hear the case. Once established, jurisdiction was not defeated by the commutation

---

1. Illinois Supreme Court Rule 402 governs the taking of guilty pleas. Ill.Rev.Stat. ch. 110A, § 402 (1977). Subsection (a) of that rule requires that before accepting the guilty plea the trial judge determine that the defendant understand the nature of the charge, the minimum and maximum sentence prescribed by law, that he has a right to plead not guilty, and that a guilty plea constitutes a waiver of the right to trial by jury and the right to confront witnesses. Subsection (e) further requires that in

"cases in which the defendant is charged with a crime punishable by imprisonment in the penitentiary, the proceedings . . . shall be taken verbatim, transcribed, filed, and made a part of the common-law record."

2. Although Grundset has framed his argument before this court in terms of *Boykin's* requiring a *verbatim transcript*, we do not find that the district judge so held.

of Grundset's sentence. *Carafas v. LaVallee*, 391 U.S. 234, 239, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968). *Carafas* held that a habeas case is not moot so long as there exist collateral consequences of a conviction that are subject to relief by the district court.

■ The question before this court is what collateral consequences, if any, follow from Grundset's misdemeanor conviction and whether they are significant enough to overcome a holding of mootness in this case. The standard which governs is stated in *Sibron v. New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968): "a criminal case is moot only if it is shown that there is *no possibility* that any collateral legal consequences will be imposed on the basis of the challenged conviction" (emphasis added).

It is *possible* that the conviction for aggravated assault would lead to a stiffer sentence if Grundset again encountered difficulties with the law, *see* Ill.Rev.Stat. ch. 38, § 1005–5–3.2(a)(3) (1977). Second, it is *possible* that Grundset could be charged and tried for a subsequent criminal act in a jurisdiction that permitted impeachment by his prior misdemeanor conviction. *E.g., State v. Hurt*, 49 N.J. 114, 228 A.2d 673 (1967) (per curiam) (crime includes misdemeanors regardless of moral turpitude); *Sullivan v. State*, 333 P.2d 591 (Okl.Cr.1958) ("conviction of crime" not limited to offense involving moral turpitude); *see also The Supreme Court, 1967 Term*, 82 Harv.L.Rev. 63, 297–98 (1968) (suggesting there will always be some state in which a legal disability might exist). Although the potential legal disabilities facing Grundset as a result of his misdemeanor conviction are somewhat more speculative than those facing a convicted felon, *see Harrison v. Indiana*, 597 F.2d 115 (7th Cir. 1979), the *possibility* of a disability exists. We find therefore that, under *Sibron*, the controversy is not moot.

## III. DISCUSSION

The respondent-appellant contends that the petitioner's constitutional rights were not denied but that even if his rights under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), were abridged, the district court should have held an evidentiary hearing rather than granting Grundset's motion for summary judgment.

Grundset points to a number of grounds which in his view justify the district court's grant of summary judgment. For purposes of discussion, we will group his arguments as follows: (1) the felony/misdemeanor categorization embodied in Illinois Supreme Court Rule 402(e) is an unreasoned distinction violative of the equal protection clause; (2) his sixth amendment right to effective counsel and/or his fourteenth amendment right to an effective appeal was violated by denial of a verbatim transcript; (3) a transcript of the guilty plea proceedings is mandated by *Boykin.*

This organization differs from that of both the district court opinion and the briefs submitted to this court in which the right to appeal argument and the *Boykin* argument were treated as one. As discussed *infra*, the presumption against a waiver of constitutional rights, *see Brewer v. Williams*, 430 U.S. 387, 402–04, 97 S.Ct. 1232, 1241–1242, 51 L.Ed.2d 424 (1977), which is pertinent to a *Boykin* claim, necessitates that the State carry the burden of showing that Grundset's plea was knowing and voluntary. It is not clear, however, that the burden is similarly shifted to the State when a petitioner alleges an abrogation of his right to appeal. We therefore are convinced that clarity demands separate treatment of these arguments.

We note at the outset that a grant of summary judgment is appropriate only where there exists no genuine issue of material fact, Fed.R.Civ.P. 56(e), and that a court of appeals applies this same Rule 56 standard on review. *Ed Houser Enterprises, Inc. v. General Motors Corp.*, 595 F.2d 366, 368 (7th Cir. 1979) (per curiam).

### A. Equal Protection

■ The State's limitation of its requirement for verbatim transcripts of guilty plea proceedings to cases in which a penitentiary

sentence might result, Ill.Rev.Stat. ch. 110A, § 402(e) (1977), will withstand equal protection analysis if "any state of facts reasonably may be conceived to justify it." *See, e.g., United States v. Weatherford*, 471 F.2d 47, 51 (7th Cir. 1972) (citation omitted), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2144, 36 L.Ed.2d 695 (1973).

Grundset argues that the Rule 402(e) distinction is violative of the equal protection clause primarily on the basis of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and *Mayer v. City of Chicago*, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971). The considerations raised by *Boykin*, which we do not find relevant to an equal protection analysis, are discussed in Section III(C), *infra*. We find little support in *Mayer* for Grundset's contention.[3]

In *Mayer*, an indigent defendant sought a free transcript in order to perfect his appeal. The Illinois Supreme Court rejected his request because Illinois Supreme Court Rule 607(b), as it then existed, provided indigents with transcripts only in felony cases. The United States Supreme Court held the Rule unconstitutional, stating:

> The distinction between felony and nonfelony offenses drawn by Rule 607(b) can no more satisfy the requirements of the Fourteenth Amendment than could the like distinction in the Wisconsin law, held invalid in *Groppi v. Wisconsin*, 400 U.S. 505 [91 S.Ct. 490, 27 L.Ed.2d 571] (1971), which permitted a change of venue in felony but not in misdemeanor trials. The size of the defendant's pocketbook bears no more relationship to his guilt or innocence in a nonfelony than in a felony case.

404 U.S. at 195–96, 92 S.Ct. at 415. The Court required that the State furnish Mayer a record of "'sufficient completeness,'" *id.* at 198, 92 S.Ct. at 416, but stated that a verbatim transcript was necessary only if it were required "to assure the indigent as effective an appeal as would be available to the defendant with resources to pay his own way," *id.* at 195, 92 S.Ct. at 415. If the grounds of the appeal state a "colorable need" for a verbatim transcript, the burden must be placed on the State to show that an "'alternative' will suffice for an effective appeal." *Id.*

■ *Mayer* clearly involves both due process and equal protection considerations. The question critical to Grundset's equal protection argument is what force *Mayer* has in a case where indigency is not a factor. *Mayer* has frequently been cited in cases involving the rights of indigents, *see Davis v. Page*, 618 F.2d 374, 383 (5th Cir. 1980); *United States v. Decoster*, 624 F.2d 196, 265 n.8 (D.C.Cir.1979) (en banc) (MacKinnon, J., concurring in result); *Hanson v. Circuit Court of First Judicial District*, 591 F.2d 404, 405 (7th Cir. 1979), *cert. denied*, 444 U.S. 907, 100 S.Ct. 220, 62 L.Ed.2d 143. Our attention has not been called to a single case, however, in which a distinction between felons and misdemeanants that affected rich and poor alike has been analyzed by reference to *Mayer*. We further note that in *Adams v. Daniel*, 356 F.Supp. 1109, 1110 (E.D.Tenn.1972), *aff'd mem.*, 473 F.2d 911 (6th Cir. 1973), the district court explicitly rejected the habeas petitioner's reliance on *Mayer* in a case not involving indigency.[4]

---

**3.** The other cases relied on by Grundset in his equal protection argument are no more persuasive than *Mayer*. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), involved the rights of indigents. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), make no reference to a felony/misdemeanor distinction. *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), defined the parameters of the right to

trial by jury but did not involve an equal protection analysis.

**4.** The *Mayer* Court's reference to *Groppi v. Wisconsin*, 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971), does not alter our conclusion that the indigency factor was critical in *Mayer*. The *Groppi* Court referred to the fourteenth amendment without specifying whether its focus was the equal protection clause or the due process clause. *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), on which the *Groppi* analysis relies, however,

We conclude therefore that the equal protection analysis of *Mayer* turns on the distinction between indigents and non-indigents. Because Rule 402(e) makes no such distinction, we find *Mayer* of no relevance to Grundset's equal protection argument.

■ In considering whether the felony/misdemeanor categorization of Rule 402(e) is reasonable, we first note that Rule 402(a) accords the same protection to the rights of misdemeanants as it does to the rights of felons. We recognize that the misdemeanor cases excluded from the subsection (e) transcript requirement vary greatly in severity and in the likelihood of generating an appeal. In light of these considerations, we think that Illinois has acted reasonably in not requiring that, as a matter of course, a verbatim transcript be made of all misdemeanor guilty plea proceedings.

## B. Right to Effective Counsel and Right to Appeal

■ It is well established that if a State provides for appellate review, such proceedings must comport with due process. *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956). Grundset argues that due process mandates a verbatim transcript for purposes of appeal, at least where the defendant is represented by new counsel on appeal. We find little support for this argument.

First, as Grundset concedes, the principal case on which he relies, *Hardy v. United States*, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), was decided pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure and therefore cannot be deemed a constitutional mandate. *See also United States v. Selva*, 559 F.2d 1303 (5th Cir. 1977); *United States v. Gregory*, 472 F.2d 484 (5th Cir. 1973) (dicta).

Second, even if these cases had been decided on constitutional grounds, they would be distinguishable from the instant case in that they involved trials rather than guilty plea proceedings. Grundset quotes Justice

Goldberg's concurring opinion in *Hardy* for the proposition that:

> As any effective advocate will attest, the most basic and fundamental tool of his profession is the complete trial transcript, through which his trained finger may leaf and his trained eyes may roam in search of an error, a lead to an error, or even a basis upon which to urge a change in an established and hitherto accepted principle of law.

375 U.S. at 288, 84 S.Ct. at 431 (footnote omitted). It is evident that the opportunities to which Justice Goldberg refers are greater when an entire trial rather than a brief proceeding has been held. Contrary to the view of the district judge, we also find *Mayer v. City of Chicago*, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971), distinguishable on this ground.

Third, in cases where an *indigent* has been denied a free transcript, the Supreme Court has held that a verbatim transcript is not always required. *Mayer v. City of Chicago*, 404 U.S. 189, 195, 92 S.Ct. 410, 415, 30 L.Ed.2d 372 (1971); *Draper v. Washington*, 372 U.S. 487, 495–96, 83 S.Ct. 774, 778–779, 9 L.Ed.2d 899 (1963); *see Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). If a full transcript is not constitutionally required in these cases that require scrutiny pursuant to the equal protection clause as well as the due process clause, we cannot conclude that the Illinois procedure which affects rich and poor alike is unconstitutional.

*Mayer* did state however that "where the grounds of appeal ... make out a colorable need for a complete transcript, the burden is on the State to show that only a portion of the transcript or an 'alternative' will suffice for an effective appeal on those grounds." 404 U.S. at 195, 92 S.Ct. at 415 (citing *Draper v. Washington*, 372 U.S. 487, 495–96, 83 S.Ct. 774, 778–779, 9 L.Ed.2d 899 (1963)). If Illinois Supreme Court Rule 402(e) pertained to transcripts of full trials and distinguished between indigents and other defendants, the State could not require the defendant to show the inadequacy

is a due process case. We view *Groppi* as a due process rather than an equal protection decision and therefore not supportive of Grund-

set's contention that the felony/misdemeanor distinction was the critical equal protection element in *Mayer*.

of a bystander's bill, as provided for in Rule 323(c), Ill.Rev.Stat. ch. 110A, § 323(c) (1977).[5]

Because the case at bar involves neither indigency nor a full trial, it is not clear to us that *Mayer* requires the State to prove the adequacy of the Rule 323(c) procedure in this case. The disposition in *Groppi v. Wisconsin*, 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971), suggests the burden might remain with Grundset to show the inadequacy of this alternative. *Groppi* involved a Wisconsin statute which the Wisconsin Supreme Court had interpreted as precluding a change of venue in misdemeanor cases. Like Illinois Supreme Court Rule 402(e), the Wisconsin statute did not result in discrimination against indigents. The *Groppi* Court held that "under the Constitution a defendant must be given an opportunity to show that a change of venue *is* required in *his* case," 400 U.S. at 511, 91 S.Ct. at 493, and vacated the defendant's conviction to allow him the opportunity to show actual jury prejudice, *id.* at 514, 91 S.Ct. at 495 (Blackmun, J., concurring).

It seems most plausible to us that the allocation of the burden in *Mayer* reflects the added concern of that Court with the defendant's equal protection rights and would therefore be inapplicable in this case. We do not feel compelled to decide this issue, however, because we are not convinced that Grundset's allegations established a "colorable need," *Mayer*, 404 U.S. at 195, 92 S.Ct. at 415, for a verbatim transcript.

A verbatim transcript would shed no light on whether Grundset was aware that he might have pleaded insanity or whether the police had indicated that he would be charged with attempted murder if he again went near his victim. The only purpose that would be served by a full record of the guilty plea proceeding is as clarification whether Judge Nielson informed Grundset of the constitutional waivers implicit in a plea of guilty as required by Rule 402(a), Ill.Rev.Stat. ch. 110A, § 402(a) (1977), and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The Illinois Supreme Court has held that a verbatim transcript is not statutorily required to show compliance with Rule 402(a), *People v. Hopping*, 60 Ill.2d 246, 326 N.E.2d 395 (1975), *cert. denied and appeal dismissed*, 423 U.S. 907, 96 S.Ct. 209, 46 L.Ed.2d 136.[6] As our discussion of *Boykin, infra*, indicates, a verbatim transcript is similarly not a constitutional requirement.

We conclude therefore that neither Grundset's right to appeal nor his right to effective assistance of counsel on appeal was abrogated in this case by the State's failure to provide a verbatim transcript of the guilty plea proceeding.

## C. Affirmative Showing of Voluntary and Intelligent Plea

The district court relied in part on *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), in granting Grundset's petition. The *Boykin* Court held that the gravity of the waivers implicit in a guilty plea necessitated an affirmative showing on the record that the plea was knowing and voluntary. *Id.* at 243–44, 89 S.Ct. at 1712.[7]

---

5. Rule 323(c) provides in relevant part: "If no verbatim transcript of the proceedings is obtainable the appellant *may* prepare a proposed report of proceedings from the best available sources" (emphasis added).

6. The judge below relied on Illinois cases decided prior to *Hopping* in concluding that Rule 402(a) required a more complete record than that available in this case. We recognize that *Hopping* is distinguishable from the present case in that the pertinent common law records in *Hopping* all included a notation that the defendant had been admonished as required by Rule 402(a). To the extent, however, that earli-

er Illinois law could be read as requiring a verbatim transcript, we find those cases unpersuasive in light of *Hopping*.

7. The appellant argues that Grundset never claimed before the Illinois appellate court that "he did not understand he was pleading guilty to such [misdemeanor] charge." If the appellant is suggesting that Grundset's *Boykin* argument was not properly before the district court, he is in error. First, Grundset clearly did argue his *Boykin* claim before the appellate court, as demonstrated by his brief submitted for that proceeding. Second, the *Boykin* Court held that the absence of any affirmative showing of

The principal concern of the Court was preservation of a defendant's right not to incriminate himself, to be tried by a jury, and to confront his accusers. *See id.* A secondary concern of the *Boykin* Court in requiring a clear record of the defendant's waiver was to facilitate review "and forestall[ ] the spin-off of collateral proceedings that serve to probe murky memories." *Id.* at 244, 89 S.Ct. at 1712 (footnote omitted).

Despite this secondary purpose, a year after *Boykin* was decided, the Supreme Court upheld a plea of guilty as voluntary and intelligent even though the defendant had not been specifically advised of the constitutional rights discussed in *Boykin. North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). The *Alford* Court stated that in determining the validity of guilty pleas the "standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* at 31, 91 S.Ct. at 164 (dicta). *Alford* made clear that lack of a verbatim transcript demonstrating that the trial judge admonished the defendant in a manner consistent with *Boykin* is not constitutionally required.[8]

▪ As the Fifth Circuit noted in *Clayton v. Blackburn,* 578 F.2d 117, 120 (5th Cir. 1978) (per curiam), the mandate of *Boykin* is *best* satisfied when a verbatim transcript of the guilty plea proceeding is available on review. The *Clayton* court held, however,

that failure to provide such a transcript does not in itself establish a constitutional violation. We agree with the *Clayton* court on both of these propositions.

The fact that *Boykin* does not require a verbatim transcript is not dispositive of this case. Some affirmative showing on the record that the defendant knowingly and voluntarily waived his constitutional rights is required.[9] We must determine whether there exists any question of material fact that such a waiver was present.

The inquiry required of a district judge on a petition for habeas when the record of the guilty plea proceeding is inadequate has been discussed by several courts of appeals. First, the district judge must examine the entire record of state proceedings to determine (1) whether the petitioner raised a prima facie case of a constitutional violation, *e.g., Clayton v. Blackburn,* 578 F.2d 117, 120 (5th Cir. 1978) (per curiam); *Todd v. Lockhart,* 490 F.2d 626, 628–29 (8th Cir. 1974) (per curiam), and if so, (2) whether the *Boykin* defect was cured in the course of post-conviction proceedings by a demonstration that the plea was made voluntarily and with knowledge of its consequences, *e.g., Gardner v. Pogue,* 568 F.2d 648 (9th Cir. 1978); *Todd v. Lockhart,* 490 F.2d at 627–28; *McChesney v. Henderson,* 482 F.2d 1101, 1107 (5th Cir. 1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974).[10] In examining the state record, the

waiver constituted "error, plain on the face of the record." 395 U.S. at 242, 89 S.Ct. at 1711.

8. In *McCarthy v. United States,* 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969), the Supreme Court held that Rule 11 of the Federal Rules of Criminal Procedure requires that the judge specifically inquire whether the defendant understands the nature of the charge. As noted in *McChesney v. Henderson,* 482 F.2d 1101, 1109–10 (5th Cir. 1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102 (1974), *McCarthy* was not a constitutional decision and the cases following it are not relevant to the State guilty plea challenged here.

9. The appellant has argued that *Grundset* presents precisely the same issue that was resolved in *People v. Hopping,* 60 Ill.2d 246, 326 N.E.2d 395 (1975), *cert. denied and appeal dismissed,* 423 U.S. 907, 96 S.Ct. 209, 46 L.Ed.2d

136. Regarding the *Boykin* issue, the appellant is incorrect. As we noted previously, *see* note 6, *supra,* the pertinent common law records in *Hopping* all stated that the defendant's plea was received in compliance with Illinois Supreme Court Rule 402(a), Ill.Rev.Stat. ch. 110A, § 402(a) (1977). *Hopping* therefore presented one variety of an "affirmative showing" of a voluntary and knowing waiver that is absent in *Grundset.*

10. The burden in such a state post-conviction hearing must be allocated to the State if it is to cure the *Boykin* defect. *Griffith v. Wyrick,* 527 F.2d 109, 112 n.4 (8th Cir. 1975). Because the burden is on the State, had Grundset made a prima facie showing of non-compliance with *Boykin,* he could not have been denied relief because he failed to compile a bystander's report pursuant to Illinois Supreme Court Rule

district court must also determine whether the state tribunal provided a "full and fair hearing," *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1962), on the voluntariness of the plea. *E.g., Clayton v. Blackburn*, 578 F.2d at 119; *Hansen v. Mathews*, 424 F.2d 1205, 1208 (7th Cir. 1970), *cert. denied*, 397 U.S. 1057, 90 S.Ct. 1404, 25 L.Ed.2d 675. Consistent with *Townsend*, courts have deemed an evidentiary hearing before the district court a necessity only if the state record does not meet that standard. *Sena v. Romero*, 617 F.2d 579, 580–81 (10th Cir. 1980); *Wilkins v. Erickson*, 505 F.2d 761, 764–65 (9th Cir. 1975) (dictum); *see Todd v. Lockhart*, 490 F.2d 626, 627–28 (8th Cir. 1974) (per curiam). If a federal evidentiary hearing is held, once the petitioner demonstrates a prima facie case of the constitutional violation, the burden shifts to the State to show the voluntariness of the plea. *Sena v. Romero*, 617 F.2d at 581; *United States v. Pricepaul*, 540 F.2d 417, 423–24 (9th Cir. 1976); *Todd v. Lockhart*, 490 F.2d at 628–29. Allocating the burden in this manner is consistent with *Boykin's* requirement that a waiver not be presumed from a silent record. *United States v. Pricepaul*, 540 F.2d at 423; *see also Brewer v. Williams*, 430 U.S. 387, 403–04, 97 S.Ct. 1232, 1241–1242, 51 L.Ed.2d 424 (1977).[11]

Grundset contends that resort to an evidentiary hearing is inconsistent with *Boykin*. We disagree. The question raised by Grundset's *Boykin* claim is primarily one of fact: whether he was aware of the constitutional rights waived by his plea of guilty. The reliance of other courts on the "full and fair hearing" standard of *Townsend* demon-

strates that they too recognize the factual nature of the *Boykin* inquiry. An evidentiary hearing is necessary when such a factual claim remains unresolved. *See* 28 U.S.C. § 2254(d) (1976). Finally, the absence of such a hearing in *Boykin* is not persuasive support for Grundset's contention. *Boykin* was not a habeas case. Neither the United States Supreme Court nor the Alabama Supreme Court, the only other tribunal to comment on the voluntariness of Boykin's plea, had the capacity for independent fact finding. We therefore agree with those courts of appeals that have found a federal evidentiary hearing permissible, and at times required, under *Boykin*.

■ Applying these rules of law to the instant case, we conclude that the grant of summary judgment was inappropriate. We do not think that Grundset's right to appeal was abrogated by the State's failure to provide a more substantial written record disclosing whether Grundset waived the constitutional rights critical in *Boykin*. The proper inquiry in this case was, first, whether Grundset raised a prima facie case of a constitutional violation before the state courts and, if he did, whether the State carried its burden of proving the voluntariness of the plea.

This inquiry calls for the application of law to fact. In such a situation, a federal appellate court must scrutinize the facts that allegedly support a waiver of constitutional rights. *Brookhart v. Janis*, 384 U.S. 1, 4 & n.4, 86 S.Ct. 1245, 1247 & n.4, 16 L.Ed.2d 314 (1966). We find several portions of the state record relevant. First, Grundset had signed an explicit waiver of

323(c) and offer it in support of his case. We do not read the appellate court resolution, *People v. Grundset*, 63 Ill.App.3d 787, 20 Ill.Dec. 847, 380 N.E.2d 1056 (1978), as misallocating the burden in this manner. We think that the Illinois court relied on Rule 323(c) only in reference to Grundset's argument that his right to appeal, rather than his rights under *Boykin*, had been violated by absence of a verbatim transcript. As we stated in section III(B), *supra*, placing the burden on Grundset in the context of that argument is not clearly unconstitutional.

11. The appellant argues, on the authority of *Stetson v. United States*, 417 F.2d 1250 (7th Cir. 1969), that if an evidentiary hearing is held, the burden is on the petitioner to demonstrate the involuntariness of his plea. This would be contrary to the weight of authority. We note that *Stetson* involved a plea of guilty entered in federal court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The *Stetson* court did not mention *Boykin* nor did it discuss constitutional considerations. We therefore do not find it in any way controlling in the instant case.

his right to trial by jury. Second, the transcript of the hearing on Grundset's motion to vacate his guilty plea included a colloquy, noted by the district court, in which Grundset explicitly stated on cross-examination both that he knew he was entitled to a jury trial and that he realized he was giving up his right to *any* trial by pleading guilty. Additionally, Grundset never alleged with certainty that he had not been accorded his *Boykin* rights; his testimony was that he could not remember. Judge Nielson, on the other hand, claimed that he was "sure in [his] own mind" that he had followed his usual habit of discussing with a defendant the implications of his plea. Further, there is no question that Grundset could have been charged with attempted murder. As Judge Nielson noted, it is not surprising that Grundset would have voluntarily pleaded guilty to the lesser charge under such circumstances.

We do not read the district court opinion as challenging any of the factual findings in the state record. Similarly, we are bound to accord them a presumption of correctness. 28 U.S.C. § 2254(d) (1976); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Whether these facts constitute an affirmative showing of Grundset's voluntary and knowing waiver of his constitutional rights is, of course, a question of federal law. *Brookhart v. Janis,* 384 U.S. at 4, 86 S.Ct. at 1246. We need not afford purely legal conclusions of state tribunals regarding federal law the same presumption of correctness; however, principles of federalism compel us to recognize that Grundset's claim of involuntariness has been clearly rejected by both the state trial and appellate courts.

Neither Judge Nielson's disposition of Grundset's motion to vacate his plea nor the appellate court resolution stated explicitly whether the ruling adverse to Grundset was premised on his failure to state a prima facie case or on the State's success in meeting its burden of proving voluntariness. We would be inclined to hold that the State did demonstrate voluntariness when it elicited from Grundset, on cross-examination

before Judge Nielson, the fact that he had known he was entitled to a jury trial and that, by pleading guilty, he gave up the right to any trial.

We need not decide this question, however, because we do not think that Grundset satisfied his preliminary burden of demonstrating a prima facie case under *Boykin.* In *Boykin,* a record of the guilty plea proceeding did exist and it affirmatively demonstrated that the consequences of the defendant's plea had *not* been brought to his attention. Further, an analogous Fifth Circuit case, *Clayton v. Blackburn,* 578 F.2d 117 (5th Cir. 1978) (per curiam), is persuasive support for our conclusion.

In *Clayton,* a convicted defendant first raised the issue whether he was afforded his rights under *Boykin* in a state habeas proceeding. No transcript of the guilty plea proceeding was available. An evidentiary hearing was held before the same judge who had presided at the entry of Clayton's guilty plea. During the hearing, Clayton testified that he could not remember whether the trial judge had questioned him in a manner consistent with *Boykin.* The court reporter who had been present at the guilty plea proceeding also testified. The reporter could not find his notes from that proceeding and had no specific recollection of what had transpired. He testified, however, that he "did not remember any guilty plea proceeding before [the judge in question] in which a defendant was not 'Boykinized.'" 578 F.2d at 118 (footnote omitted). The trial judge offered his own statement for the record, indicating that he had no specific recollection of the petitioner's case but that it was his policy to advise defendants of their rights in guilty plea proceedings. The judge denied the state application for habeas.

The defendant then petitioned the United States District Court for the Eastern District of Louisiana for habeas relief. The magistrate to whom the case was assigned recommended that a writ of habeas corpus be granted and that the district court hold an evidentiary hearing to assess the credibility of those who testified at the state

hearing. The magistrate was apparently troubled by the state judge's possible reliance on his own statement. The district court did not adopt the magistrate's recommendation. Judge Alvin Rubin found that the state habeas proceeding had met the "full and fair hearing" standard of *Townsend* and held that "in the absence of even the petitioner's specific recollection of his hearing and any independent evidence suggesting that he was deprived of his rights, the unavailability of a transcript six years after a guilty plea does not alone cast sufficient doubt on the fairness of that plea to warrant a further federal hearing or the granting of the requested relief." 578 F.2d at 120. The court did state that the petitioner could apply for reconsideration if he could identify additional facts that might be adduced at an evidentiary hearing. The Fifth Circuit subsequently affirmed the denial of the petitioner's application, adopting the district court opinion.

Our conclusion that Grundset failed to meet his preliminary burden is also consistent with the appellate court's resolution in which the court stated that Grundset's objections failed to raise any serious issues of due process.

We do not believe that an evidentiary hearing is necessary in this case. If such a hearing were held, the initial burden would be on the petitioner. Grundset, however, has repeatedly asserted that he is unable to offer any additional evidence as to what transpired at his guilty plea proceeding. In the absence of convincing independent evidence that Grundset was not admonished in accordance with *Boykin*, his petition for habeas relief must be denied. The decision of the district court is therefore

Reversed.

CUDAHY, Circuit Judge, concurring in part and dissenting in part:

Unfortunately, this case cannot be satisfactorily dispatched through analysis only of the petitioner's claimed failure to receive required warnings when pleading guilty. Among other things, the majority mentions but fails adequately to resolve the petitioner's allegations that his plea was involuntary in that he was unaware of his right to pursue an insanity defense, and in that he was coerced by the state's threat to file more serious charges against him. With respect to insanity, the Supreme Court has squarely held that a plea is involuntary unless a defendant understands the nature of the offense charged, including its essential elements. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). Moreover, with respect to coercion, Illinois Supreme Court Rule 402(b) clearly recognizes that the existence of a plea agreement, as well as any threats or coercion surrounding that agreement, is relevant to the voluntariness of a guilty plea. Ill.Rev.Stat. ch. 110A, § 402(b). Neither insanity nor coercion were adequately addressed in the state court hearing on petitioner's motion to withdraw his guilty plea. At that hearing the state presented no witnesses and offered no argument. Nor was there any testimony presented to corroborate Judge Nielson's statement from the bench that it was his habit to inform defendants of their rights before accepting a plea of guilty. *Cf. Clayton v. Blackburn,* 578 F.2d 117, 118 (5th Cir. 1978) (*per curiam*). There has thus been no "full and fair hearing" under *Townsend v. Sain,* 372 U.S. 293, 294, 83 S.Ct. 745, 746, 9 L.Ed.2d 770 (1962), on petitioner's constitutional claim.

As the majority points out, it is the duty of the *district court,* on a petition for habeas when the record of the guilty plea proceeding is inadequate, to examine the record of state proceedings and to determine "whether the state tribunal provided a 'full and fair hearing' on the voluntariness of the plea." *Ante* at 877–878. I agree with the majority that Judge Roszkowski's grant of summary judgment was improper, but I believe it is equally improper for this court, in effect, to sweep under the rug issues of fact which no one has yet adequately addressed.

I therefore, while approving reversal, respectfully dissent from the majority's holding that no evidentiary hearing is necessary in this case.