987 A.2d 623 (2010)
411 N.J. Super. 501
LAKE VALLEY ASSOCIATES, LLC, t/a University Park Apartments, Plaintiff-Appellant,
v.
TOWNSHIP OF PEMBERTON, Defendant-Respondent.
A-4040-07T2
Superior Court of New Jersey, Appellate Division.
Argued November 18, 2009.
Decided February 1, 2010.
Glenn P. Callahan argued the cause for appellant (Keeley & Callahan, PC, attorneys; Mr. Callahan, on the brief).
*624 David A. Clark argued the cause for respondent (GluckWalrath, LLP, attorneys; Andrew Bayer, of counsel; Mr. Clark and William Katz, on the brief).
Before Judges STERN, SABATINO and LYONS.
PER CURIAM.
Plaintiff, a limited liability company that owns and operates a 450-unit apartment complex in Pemberton Township, appeals the Law Division's order dated March 13, 2008. The order in question dismissed plaintiff's action in lieu of prerogative writs challenging the constitutionality and statutory validity of Ordinance No. 5-2006 adopted by the Township in May 2006. The ordinance imposes certain registration obligations and other regulatory requirements on landlords within the Township.
The ordinance is aptly described in detail in the opinion of the trial judge, Judge John A. Sweeney, as follows:
The [Landlord Registration Ordinance] amends Chapter 148 of the Township Code entitled "Rental Properties." Section 1 contains definitions essential to the ordinance. Section 2 requires registration of all rental units with the Building Code Official on forms prescribed for that purpose. It also requires registration immediately upon the adoption of the ordinance and upon every change in occupancy. If there has been no change in occupancy within a three-year period, the owner of the rental unit must register on the first of January following the expiration of the three-year period.
Section 3 requires each rental unit to be registered and licensed, and Section 4 relates to inspections and requires at least one inspection every three years or upon change of occupancy. Otherwise, inspections are made only as necessitated by safety considerations. The purpose of the inspections is to determine compliance with the Township Zoning Ordinance and to ascertain whether the property complies with the Housing Code and/or Building Code and/or Uniform Fire Safety Code and/or the Property Maintenance Code. Corrections of violations must be made within [thirty] days unless they are deemed to require immediate action.
Section 5 of the ordinance prohibits the occupation of a unit that is not licensed or registered. Section 6 provides for the issuance of a license for a [three-year] period and Section 7 deals with the payment of fees. Section 8 requires owners, managing agents, superintendents, janitors, custodians, or other employees of the record owner to supply their names, addresses and telephone numbers. Either the managing agent or an individual representing the owner must also provide a cellular telephone number. That section also requires the name and address of every mortgage holder to be listed. Additionally, it requires the name and address of the fuel oil dealer, a specification of the exact number of sleeping rooms and sleeping accommodations, the names, addresses and phone numbers of all rental agencies, the number of occupants of each rental unit and whether or not the landlord has conducted a tenant screening for each new tenant.
Section 9 requires that the registration forms be available for public inspection. Sections 10 and 11 are irrelevant to this opinion. Section 12 places limitations on occupancy and Section 13 makes it a violation of the Code for the posted maximum number of occupants to be exceeded. Section 13 also provides for the police or Code Enforcement Official to issue summonses for violations of this chapter of the Code. *625 Section 14 requires the payment of taxes and other municipal charges.
Section 15 requires tenant screening at a change of occupancy. The record owner is required to conduct tenant screening for new occupants. Such screening includes a check for activity in the landlord/tenant section of the Special Civil Part of the Superior Court; Municipal Court convictions for the past [three] years; and convictions for offenses in the Superior Court for a period of [three] years.
Section 16 provides for access by police and code officials on [forty-eight] hours notice except in cases of emergency. Section 17 provides for occupant standards.
Section 18, the most controversial portion of the ordinance, deals with revocation of the license issued to registered owners by the Township. Revocation or suspension of the license by the Township Council can occur upon the happening of one or more of the following:
(1) Conviction of a violation of this chapter in the Municipal Court or other court of competent jurisdiction.
(2) Determination of a violation of this chapter at a hearing held pursuant to Subsection B herein.
(3) Renting the unit to a tenant who is convicted of 2 or more violations during course of their tenancy of the noise Ordinances of the Township of Pemberton.
(4) Permitting the rental unit to be occupied by more than the maximum number of occupants as defined herein.
(5) Maintaining the rental unit or units or the property on which the rental unit is located in a dangerous condition likely to result in injury to persons or property.
(6) A rental license issued under this chapter shall be suspended and considered revoked if taxes or other assessments are delinquent for 3 consecutive quarters....
Subsection B contains the provisions for the written complaint, notice and hearing before the Township Council or a Hearing Officer. It allows the filing of a complaint seeking the revocation or suspension of a license by either the Chief of Police, Construction Code Official or Zoning Enforcement Officer. It also provides for a hearing no sooner than [ten] days or more than [thirty] days after the issuance of the complaint to the owner. It provides that all hearings shall be recorded, that all witnesses be sworn and that the Rules of Evidence do not strictly apply. The Township Solicitor or a special Prosecutor shall be designated to prosecute the complaint.
After plaintiff's lawsuit was filed, the Township agreed to revise certain aspects of the ordinance that are not germane to the present appeal. Following that agreement, plaintiff's remaining challenges to the ordinance were considered by the Law Division.
Plaintiff's arguments contesting the validity of the ordinance were summarized by Judge Sweeney as follows:
Plaintiff argues that N.J.S.A. 55:13A-13(b) specifically delegates power to enforce the requirements of the [Hotel and Multiple Dwelling Law ("H & MD Law"), N.J.S.A. 55:13A-1 to -28,] to municipalities subject to supervision by the State and, by implication, argues that any additional regulation by the Township beyond the requirements of the statute is not permitted. Plaintiff contends that there is conflict between the ordinance and the [H & MD Law]; that the [H & MD Law] was intended to be exclusive in the field and is so pervasive *626 that it precludes coexistence of a municipal ordinance, and that the ordinance somehow violates the right of privacy of tenants. Plaintiff contends that municipal ordinances are allowed to be more restrictive than the [H & MD Law] only with regard to public health, safety and welfare. It also argues that the ordinance is preempt[ed] because [plaintiff's] registration is overseen by a state agency and that the additional information demanded by the ordinance is forbidden to be collected by the [H & MD Law]. Plaintiff also argues that Section 18 of the ordinance allows for trial of violations by both the Municipal Court and the Township Council and that Section 18 is preempted by N.J.S.A. 55:13A-12(c) which reposes the right to hear violations of the [H & MD Law] with the Office of Administrative Law.
The trial court concluded that the ordinance was for a valid public purpose, did not offend either the United States Constitution or the New Jersey Constitution, and was not preempted by any New Jersey statutes, including the H & MD Law. The trial court was also satisfied that the ordinance did not usurp the judiciary's designated functions or violate principles of separation of powers under Winberry v. Salisbury, 5 N.J. 240, 74 A.2d 406 (1950).
At the outset of his analysis, Judge Sweeney underscored the presumption of validity attached to duly-enacted municipal ordinances:
There is a strong presumption in favor of the validity of zoning regulations. Rumson Estates, Inc. v. Mayor & Council of the Borough of Fair Haven, 177 N.J. 338, 350, 828 A.2d 317 (2003); Pheasant Bridge Corp. v. [Twp.] of Warren, 169 N.J. 282, 289, 777 A.2d 334 (2001), cert. den., 535 U.S. 1077 [122 S.Ct. 1959, 152 L.Ed.2d 1020] (2002). In fact, the presumption of validity attaches to Municipal Ordinances generally. First Peoples Bank v. [Twp. of] Medford, 126 N.J. 413 [418, 599 A.2d 1248] (1991).... The burden of establishing the invalidity of the ordinance is upon the person attacking it. Vickers v. T[w]p. Co[m]m. of Gloucester, 37 N.J. 232 [242, 181 A.2d 129] (1962), cert. den., 371 U.S. 233[, 83 S.Ct. 326, 9 L.Ed.2d 495] (1963). Moreover, courts should not question the wisdom of an ordinance, and if the ordinance is debatable, it should be upheld. Bow and Arrow Manor v. Town of West Orange, 63 N.J. 335, 343, 307 A.2d 563 (1973)[; s]ee also Zilinsky v. Zoning Bd. of Adj. of Verona, 105 N.J. 363 [369, 521 A.2d 841] (19[87]) [(stating] that a "mere difference of opinion as to how an ordinance will work will not lead to a conclusion of invalidity; `no discernable reason' is the requisite standard" [(quoting Roselle v. Wright, 21 N.J. 400, 410, 122 A.2d 506 (1956)))]. Here, that burden rests with plaintiff. Plaintiff has provided the [c]ourt with no extrinsic evidence of an invalid purpose for enactment of the ordinance. Consequently, the presumption of validity remains.
Judge Sweeney then went on to address plaintiff's substantive claims of State preemption. Because we fully agree with his analysis, we quote it at length:
In Inganamort [v. Borough of Fort Lee, 62 N.J. 521, 528-38, 303 A.2d 298 (1973)], the Supreme Court established a [three] step analysis for determining the propriety of an exercise of legislative authority by a municipality: (1) whether the state constitution prohibits the delegation of municipal power on a particular subject because of the need for uniformity; (2) if the legislature may delegate authority in this area, whether they have done so; and (3) whether any delegation of power to municipalities has *627 been preempted by other state statutes dealing with the same subject matter.
Ordinarily, to determine whether an ordinance or part thereof is preempted by statute, the court should consider the [five] factors set forth in Overlook Terrace Mgmt. Corp. v. Rent Control Bd. of West New York, 71 N.J. 451[461-62] (1976). However, in this case, such an analysis is not required because N.J.S.A. 55:13A-25(b) answers the preemption inquiry. It provides explicitly that:
This act is not intended, and nothing in this act shall be construed, to preclude the right of any municipality to adopt and enforce ordinances, or regulations, more restrictive than this act or any rules or regulations promulgated thereunder.

No legislative statement could be clearer. Consequently, the [H & MD Law] itself contains an explicit expression that preemption was never intended. Not only does the [H & MD Law] itself not preempt municipal action, none of the rules or regulations promulgated pursuant to [it] can preempt a municipality from acting in the field. That the [H & MD Law] is consistent with other legislative delegation[s] of authority can best be summed up in N.J.S.A. 40:48-2.12m:
The [governing body] of a municipality may adopt ordinances regulating the maintenance and condition of any unit of dwelling space, upon the termination of occupancy, in any residential rental property for the purpose of the safety, healthfulness, and upkeep of the structure and the adherence to such other standards of maintenance and condition as are required in the interest of public safety, health and welfare.
While not as specific as N.J.S.A. 55:13A-25(b), the above statutory enactment exemplifies the [Legislature's] intent not to make state law exclusive in the field of regulation of multiple dwelling units.
It is not debatable that the ordinance does not conflict with the H & MD [Law]. Rather, it is in some ways more restrictive and expansive.... Such restriction and expansion is specifically allowed in the [H & MD Law] itself. The regulation of multiple dwelling units is not an area that necessitates total uniformity statewide. The [L]egislature's delegation of power to municipalities in this area recognizes the right of municipalities to consider local concerns regarding police and fire protection, traffic control, local health and welfare issues as well as a myriad of other local concerns. Here, Section 3 concisely and sufficiently sets forth the purposes of the ordinance, none of which are proscribed by the [H & MD Law].
Moreover, the focus of this ordinance is on the registration and licensing of rental properties rather than landlord/tenant relationships. The ordinance has nothing to do with tenants['] rights and is certainly not preempted by the state Anti-Eviction Act, N.J.S.A. 2A:18-61.1.
Lastly, Judge Sweeney explained why he rejected plaintiff's claims of due process violations and improper usurpation of judicial power:
Furthermore, there are no constitutional impediments to the local ordinance as both [the] procedural and substantive due process rights of licensees and registrants are afforded adequate protection. Finally, there is no usurpation of the judicial power by the provisions of this ordinance. The ordinance simply invests in the Township Council the power to enforce the ordinance. Section 18A(1) of the ordinance grants the *628 Township Council the power of enforcement over the revocation of registration only when a conviction in the [M]unicipal [C]ourt or other court of competent jurisdiction occurs.
Plaintiff appeals, renewing its contentions that the ordinance is unconstitutional in various respects and that it is allegedly in conflict with state law.
Having carefully considered plaintiff's arguments, we affirm the trial court's dismissal of its prerogative writs action, essentially for the reasons cogently stated in Judge Sweeney's opinion dated February 13, 2008. We amplify Judge Sweeney's analysis with only some limited comments, several of which relate to specific concerns addressed during the oral argument before us.
First, we note that plaintiff's preemption arguments rest mainly upon Judge Milton Conford's dissent in Inganamort, supra, 62 N.J. at 538-46, 303 A.2d 298, in which Judge Conford advocated a more limited notion of the powers delegated by the State to municipalities in matters of rental housing. Because we are an intermediate appellate court, we are bound to follow the law as it has been expressed by a majority of the members of our Supreme Court. State v. Hill, 139 N.J.Super. 548, 551, 354 A.2d 670 (App.Div.1976). We therefore decline plaintiff's invitation to apply in this case the reasoning set forth in Judge Conford's dissent, which the Supreme Court has failed to embrace in the three ensuing decades.
Second, we do not read the trial court's decision or the ordinance itself to authorize the Township to impose a sanction of incarceration merely by a vote of the Township Council without a trial before a judicial officer.
Furthermore, we do not read the ordinance to require a landlord in the Township to refrain from entering into a lease with a tenant merely because he or she has a prior criminal record.
Lastly, we note that the trial court's disposition of plaintiff's facial challenge does not foreclose a future "as-applied" challenge to the ordinance upon its enforcement. See, e.g., In re Adoption of N.J.A.C. 11:3-29, 410 N.J.Super. 6, 26 n. 4, 979 A.2d 770 (App.Div.), certif. denied, 200 N.J. 506, 983 A.2d 1113 (2009) (rejecting appellant's facial challenge to new regulations, but preserving the possibility of a future "as-applied" challenge once the regulations were implemented).
Affirmed.