**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1335-15T1

FRIENDS OF RAHWAY
BUSINESS, L.L.C.,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

RAHWAY MUNICIPAL COUNCIL
AND CITY OF RAHWAY,

    Defendants-Appellants/
    Cross-Respondents.

_____

          Argued May 18, 2017 — Decided July 3, 2017

          Before Judges Hoffman, O'Connor and Whipple.

          On appeal from Superior Court of New Jersey,
          Law Division, Union County, Docket No. L-0410-
          15.

          Brian M. Hak argued the cause for appellants
          (Weiner Lesniak, L.L.P., attorneys; Mr. Hak,
          of counsel and on the briefs; John P. Miller
          and Julia O. Donohue, on the briefs).

          William H. Michelson argued the cause for
          respondents.

          Robert S. Goldsmith argued the cause for
          amicus curiae Morristown Partners, Inc., d/b/a
          Morristown Partnership (Greenbaum, Rowe,

Smith & Davis, L.L.P., attorneys; Mr. Goldsmith, of counsel and on the brief; Robert J. Flanagan, III, on the brief).

Edward Purcell argued the cause for amicus curiae New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys (Mr. Purcell, Associate Counsel, on the brief).

Edward J. Trawinski argued the cause for amicus curiae New Jersey Managed Districts Association and Ironbound Business Improvement District (Schenck Price Smith & King, L.L.P., attorneys; Mr. Trawinski, on the brief).

Melanie R. Walter, Deputy Attorney General, argued the cause for amicus curiae New Jersey Office of the Attorney General (Christopher S. Porrino, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Walter and Susan M. Scott, Deputy Attorneys General, on the brief).

PER CURIAM

Defendants Rahway Municipal Council and City of Rahway (Rahway) appeal from the October 19, 2015 Law Division order invalidating a municipal ordinance enacted under the Special Improvement District (SID) statutes, N.J.S.A. 40:56-65 to -89. Plaintiff cross-appealed the denial of counsel fees. Four amicus briefs were submitted, with the court's approval. Because of the trial court's misinterpretation of N.J.S.A. 40:56-65 to -89, we reverse and vacate certain provisions of the October 19, 2015

order, affirm the denial of counsel fees, and remand for further proceedings.

In September 1993, Rahway adopted Ordinance No. A-40-93, pursuant to N.J.S.A. 40:56-65 to -89, amending the Rahway Municipal Code to create a SID. The ordinance allowed the city to collect special assessments on affected properties. In 2014, Rahway enacted Ordinance No. 0-42-14 (the Ordinance), expanding the SID to include all non-residential and non-public properties in the city, and residential properties with more than four units. Rahway sent letters to affected property owners providing notice of a December 8, 2014 public hearing. Some affected property owners claim they only received the notices on December 5, 2014, but at least twenty-five members of the public attended.

Affected property owners formed plaintiff Friends of Rahway Business, L.L.C. to challenge the Ordinance, and filed a complaint in the Law Division through plaintiff. The court conducted a hearing on October 9, 2015, where plaintiff argued Rahway had not utilized money from the SID since 1993 and the expansion of the SID was only to collect additional assessments. Plaintiff also argued the affected property owners were given insufficient notice for the Ordinance to be enacted, the scope of the SID was unprecedented, and defendants' actions amounted to constitutional violations entitling plaintiff to counsel fees. Rahway asserted

all statutory notice requirements were satisfied, and the Ordinance is subject to a presumption of validity. Rahway referenced other towns with similar SIDs and argued the statute does not prohibit a citywide SID.

The judge disagreed with Rahway and invalidated the Ordinance in the October 19, 2015 order. The judge considered the legislative intent of the enabling statutes and found the legislature had not intended for a SID to encompass an entire city. The judge denied plaintiff counsel fees and failed to address plaintiff's other arguments. This appeal followed. Amici support and join in the arguments raised by Rahway, and urge us to overturn the judge's decision.

At the outset, we note our standard of review. A court may not substitute its judgment for that of a municipal body unless it is proven the Board's action was arbitrary, unreasonable or capricious. Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002) (citing Medici v. BPR Co., 107 N.J. 1, 15 (1987)).

Rahway argues the trial judge should have yielded to the Ordinance's required presumption of validity. Rahway also assails four findings of the trial judge. Specifically, Rahway challenges the judge's findings that the SID statute does not allow: 1) a municipal-wide SID; 2) SIDs containing non-contiguous properties;

3) SIDs in an area of a municipality other than a traditional "downtown" area; and 4) SIDs containing non-commercial use, such as industrial and certain multi-family apartment properties. We address each argument in turn.

The judge considered the presumption of validity attached to municipal ordinances. Lake Valley Assocs., LLC v. Twp. of Pemberton, 411 N.J. Super. 501, 505 (App. Div.), certif. denied, 202 N.J. 43 (2010). The SID statute provides "municipalities should be given the broadest possible discretion in establishing by local ordinance the self-help programs most consistent with their local needs, goals, and objectives." N.J.S.A. 40:56-65(b)(3). In fact, the trial judge addressed the presumption by saying, "[t]his presumption may only be overcome by a showing that the [O]rdinance is arbitrary or unreasonable, or that it is constitutionally defective on its face[,]" and "a court need only decide whether the [O]rdinance represents a reasonable exercise of the legislature's delegation of authority to municipalities in enacting the SID statute."

However, the judge determined "[c]ontrary to being presumptively valid, the court finds [the Ordinance], expanding the SID, to be irreconcilable with the enabling statutes and the legislative intent behind the states' enactment." The judge considered the Ordinance "an improper exercise of the authority

delegated to the City Council under the SID statutes," and ordered it invalidated.

In <u>Fanelli v. City of Trenton</u>, 135 <u>N.J.</u> 582 (1994), our Supreme Court stated,

> In determining whether [an] ordinance is authorized by the SID statute, we do not pass on the wisdom of the City's plan. We need decide only whether the ordinance represents a reasonable exercise of the Legislature's delegation of authority to municipalities in enacting the SID statute. Furthermore, we interpret those delegated powers broadly.
>
> [<u>Fanelli</u>, <u>supra</u>, 135 <u>N.J.</u> at 591 (citations omitted).]

It is well established, a statute's plain language is the clearest indication of its meaning. <u>Bergen Commercial Bank v. Sisler</u>, 157 <u>N.J.</u> 188, 202 (1999) (citing <u>Lehmann v. Toys 'R' Us, Inc.</u>, 132 <u>N.J.</u> 587, 600-01 (1993); <u>Grigoletti v. Ortho Pharm. Corp.</u>, 118 <u>N.J.</u> 89, 107-08 (1990)). When interpreting a statute, our "overriding goal is to give effect to the Legislature's intent." <u>State v. D.A.</u>, 191 <u>N.J.</u> 158, 164 (2007) (citing <u>DiProspero v. Penn</u>, 183 <u>N.J.</u> 477, 492 (2005)). The best indicator of that intent is "the plain [statutory] language chosen by the Legislature." <u>State v. Perry</u>, 439 <u>N.J. Super.</u> 514, 523 (App. Div.), <u>certif. denied</u>, 222 <u>N.J.</u> 306 (2015) (quoting <u>State v. Gandhi</u>, 201 <u>N.J.</u> 161, 176 (2010)). We thus read the text of a statute in accordance with its ordinary meaning unless otherwise

specified.  Ibid.; see also N.J.S.A. 1:1-1 (explaining "words and phrases [in statutes] shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.").

In cases where a plain reading of the statute "leads to a clear and unambiguous result, then the interpretive process should end, without resort to extrinsic sources." D.A., supra, 191 N.J. at 164 (citing DiProspero, supra, 183 N.J. at 492).  If, however, the plain language of the statute is ambiguous, we may turn to extrinsic evidence to determine the Legislature's intent in enacting the statute.  Ibid.  Turning to such extrinsic evidence is also necessary if a plain reading of a statute renders "an absurd result" at odds with the Legislature's intent.  Ibid.; State v. Williams, 218 N.J. 576, 586 (2014) (citing DiProspero, supra, 183 N.J. at 493).  Such extrinsic evidence includes "legislative history, committee reports, and contemporaneous construction."  DiProspero, supra, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).  Such evidence aids us in elucidating the Legislature's intent.  We "may not rewrite a statute or add language that the Legislature

omitted." State v. Munafo, 222 N.J. 480, 488 (2015) (citing DiProspero, supra, 183 N.J. at 492).

The SID statute defines "special improvement district" as an area within a municipality designated by municipal ordinance as "an area in which a special assessment on property within the district shall be imposed for the purposes of promoting the economic and general welfare of the district and the municipality." N.J.S.A. 40:56-66(b). Our Supreme Court has held a special assessment is different from a tax, and such assessments reimburse the town for improvements made to SID properties. 2nd Roc-Hersey Assocs. v. Town of Morristown, 158 N.J. 581, 592-96 (1999).

N.J.S.A. 40:56-68(b) allows a municipality to adopt a SID if the municipality finds:

> (1) that an area within the municipality, as described by lot and block numbers and by street addresses in the enabling ordinance, would benefit from being designated as a special improvement district; (2) that a district management corporation would provide administrative and other services to benefit the businesses, employees, residents and consumers in the [SID]; (3) that a special assessment shall be imposed and collected by the municipality with the regular property tax payment or payment in lieu of taxes or otherwise, and that all or a portion of these payments shall be transferred to the district management corporation to effectuate the purposes of this amendatory and supplementary act and to exercise the powers given to it by municipal ordinance; and (4) that it is in the best interests of the municipality and the

public to create a [SID] and to designate a district management corporation; except that no district management corporation shall be designated to receive any funds or to exercise any powers pursuant to the provisions of this amendatory and supplementary act, unless the board of directors of that corporation shall include at least one member of the governing body of the municipality.

When creating the SID, the ordinance "may exempt residential properties, residential portions of mixed use properties, parcels with any number of residential units, or vacant properties located within the district from special assessment." N.J.S.A. 40:56-66(b).

The statute allows the governing body to "authorize the commencement of studies and the development of preliminary plans and specifications relating to the creation and maintenance of a pedestrian mall facility or [SID], including, whenever possible, estimates of construction and maintenance, and costs and estimates of potential gross benefit assessment." N.J.S.A. 40:56-70.

The statute also provides for the designation of "downtown business improvement zones":

Any municipality which has adopted or adopts an ordinance authorizing the establishment of a [SID] pursuant to section 7 of P.L. 1972, c. 134 [N.J.S.A. 40:56-71] may, by ordinance, designate all or any portion of that district which contains primarily businesses providing retail goods and services as a "downtown business improvement zone," notwithstanding

A-1335-15T1

that the designated zone is located within an
urban enterprise zone.

[N.J.S.A. 40:56-71.2.]

The statute defines "downtown business improvement zone" as "a zone designated by a municipality, by ordinance, pursuant to section 2 of P.L.1998, c.115 in order to promote the economic revitalization of the municipality through the encouragement of business improvements within the downtown area." N.J.S.A. 40:56-71.1.

Regarding imposition of a citywide SID, the trial judge made the following findings:

> These words and phrases, read and construed within their context, indicate that the legislature's intent in enacting the statute was for SIDs to be considered specific regions within the larger municipality. No words or phrases in N.J.S.A. 40:56-66 indicate that the legislature intended the statute to be construed to mean that an entire municipality was envisaged as a potential SID.

The judge further found "[i]t is improbable that the legislature intended that an entire [c]ity could be considered a SID."

Rahway asserts the size and boundaries of the SID are not the relevant inquiry. Rahway frames the issue as "whether the municipality's governing body could find the area, no matter where it is located, would benefit from being designated as a SID."

Rahway challenges the trial judge's concern a municipal SID would amount to a special assessment for every nonresidential property.

We agree with defendants the SID statute does not specifically prohibit a citywide SID; the language of the pertinent statutory provisions merely suggests a SID could be a small, designated area within a municipality. For example, a SID is defined as an "area within a municipality" that the municipality designates through an ordinance. N.J.S.A. 40:56-66(b). Additionally, a municipality can create a SID if it finds "an area within the municipality . . . would benefit from being designated as a SID." N.J.S.A. 40:56-68(b)(1) (emphasis added).

The trial judge relied on the language in these statutes, as well as a news release from the Office of the Governor and a statement issued by the legislature when the 1984 amendment to the SID statute was enacted. However, the governor's press release indicated the legislation would allow "municipalities to create [SIDs] to promote economic growth and employment in downtown business districts," and the legislature's statement accompanying the enactment of the 1984 amendment stated the statute "would permit municipalities to establish [SIDs] to promote economic growth and employment in downtown business districts." Consistent with the legislature's intent, the SID statutes provide municipalities with broad discretion when creating SIDs, calling

11

into question the trial court's narrower reading of the statutes. See N.J.S.A. 40:56-65(b)(3). Moreover, the New Jersey Constitution grants municipalities broad discretion: "The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor." N.J. Const. art. IV, § VII, ¶ 11.

Nothing in the SID statutes specifically prohibits a citywide SID, provided a municipality can support such a SID with the specific findings necessary to adopt a SID ordinance, as set forth at N.J.S.A. 40:56-68. This standard requires a municipality to support its determination an area would benefit from being a SID and services would be provided to benefit individuals within the SID. Ibid.

Rahway asserts it met these requirements; however, such evidence is not before this court, and the trial court did not reach this issue. Nevertheless, we are able and do find there is no prohibition against a municipality adopting a citywide SID, and we remand for the trial court to consider the merits of the Ordinance itself.

Rahway also argues the trial judge incorrectly concluded the SID statute does not allow for a noncontiguous SID. The trial judge found, "The legislature's intent should not be misconstrued

to mean that a SID can be created anywhere in a municipality, in a noncontiguous manner, incorporating all commercial and industrial property, so long as the entire municipality benefits from the same."

N.J.S.A. 40:56-66(b) allows exemptions from special assessments on certain properties within the SID. This follows the SID definition, which provides for "an area in which a special assessment on property within the district shall be imposed." Ibid. Thus, all properties within a SID are subject to the special assessment, unless they are subject to a possible exemption.

Here, the Ordinance included all non-residential and non-public properties in the city, as well as residential properties with more than four units.[1] Plaintiff argues the exemption of residential properties made the SID "noncontiguous," but the statute permits these exclusions. If the SID is the entire municipality, the only reason the SID is noncontiguous is its exclusions. The court's determination a SID must be contiguous was erroneous because the statute specifically provides for exemptions of some properties within a SID, as the Ordinance did here.

---

[1]   With the exception of the Merck campus within the city, which defendants assert is the only location zoned "for research development."

Rahway also asserts the trial court erroneously found the SID statute only permits SIDs in downtown business districts. We agree. A separate section of the statute authorizes creation of "downtown business improvement zone[s]." N.J.S.A. 40:56-71.1. Another portion provides, "Any municipality which has adopted or adopts an ordinance authorizing the establishment of a special improvement district . . . may, by ordinance, designate all or any portion of that district which contains primarily businesses providing retail goods and services as a 'downtown business improvement zone,' . . . ." N.J.S.A. 40:56-71.2.

If the legislative intent for the creation of SIDs was to revitalize only "downtown business districts," the legislature would not have separately allowed for a "downtown business improvement zone" within a SID. The plain language of N.J.S.A. 40:56-71.2 is unambiguous.

Rahway finally argues the trial court improperly found non-commercial properties are not allowed within a SID. Rahway asserts the "trial court specifically held Class 4B (Industrial) and Class 4C (Apartments-4 units and over) properties would not 'stand to benefit in the ways intended by the legislature when enacting the statute.'" The trial judge found "residential properties, or vacant lots, or mixed use properties . . . should be excluded" and

found they "should not be subject to a special assessment for such improvements and programs."

Having the discretion to exclude residential properties does not require a municipality to exclude residential properties from SIDs. Nothing in the statutes mandates these properties be excluded; on the contrary, the statute provides that these properties "may" be excluded. N.J.S.A. 40:56-66(b). Thus, the judge's findings "[t]he legislature recognized these types of properties were not the ones that would benefit from SID improvements" is inconsistent with a plain reading of the statute. The judge's determination these properties must always be excluded is unsupported.

Rahway argues the trial court misconstrued the SID statutes and argues sixty-seven SIDs within nineteen counties have established SIDs with similar characteristics to its own. However, this evidence was not included in the trial record. The only evidence before the trial court on this point was a map of Carteret. Accordingly, we decline to consider the arguments relating to the content of ordinances from other municipalities. See R. 2:5-4(a); R. 2:6-1(a).[2]

_____

[2] Plaintiff argues Rahway violated Rule 2:6-1(a) by failing to include five certifications in its appendix included in the record before the trial court and inappropriately included 101 pages in

In its cross-appeal, plaintiff argues the Ordinance violated the constitutional rights of the affected property owners under the Equal Protection Clause and the Tax Uniformity Clause of the New Jersey Constitution and seeks counsel fees and litigation expenses under the New Jersey and Federal Civil Rights Acts. We disagree and affirm the denial of counsel fees.

Plaintiff relies on Tumpson v. Farina, 218 N.J. 450 (2014). In Tumpson, the New Jersey Supreme Court found a city clerk had violated the plaintiff's constitutional right when the clerk refused to accept a petition for a referendum for filing, and the Court held the failure to accept the petition violated a substantive right protected by the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c). Tumpson, supra, 218 N.J. at 481-86. The Tumpson court found a "court may award the prevailing party

its appendix that were not before the trial court. Rule 2.6-1(a)(1) provides appellant's appendix must include "such other parts of the record, excluding the stenographic transcript, as are essential to the proper consideration of the issues, including such parts as the appellant should reasonably assume will be relied upon by the respondent in meeting the issues raised." The failure to submit the five certifications is not excused by any exception in Rule 2:6-1. However, plaintiff does not articulate why these certifications are relevant to our review. Thus, we need not consider this particular omission on defendant's part.

However, plaintiff is correct that defendant's appendix pages Da241-322 were not included in the record before the trial court; therefore, we do not consider this evidence on appeal. See R. 2:5-4(a).

reasonable attorney's fees and costs" under the Civil Rights Act. Id. at 472 (citing N.J.S.A. 10:6-2(f)). To establish a violation of the Civil Rights Act, the affected property owners must prove (1) "'the Constitution or laws of this State' conferred on them a substantive right; (2) the [defendants] deprived them of that right; and (3) the [defendants were] 'acting under color of law' when [they] did so." Id. at 473.

Here, plaintiff has not established any of these elements. Plaintiff argues the receipt of a tax bill that violated the enabling statute constitutes a "legal violation," and "at worst is unconstitutional." Thus, plaintiff seems to recognize this may not be a constitutional issue; however, plaintiff does assert, "property rights are indistinguishable from civil rights" in this matter, and "the right not to pay a tax . . . has to be viewed as one of constitutional dimension." Plaintiff has not established the substantive right violated by defendants, let alone provide evidence to support its claim, beyond claiming a parallel to Tumpson.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17